ROBERT COULTER, APPELLANT, V. MARION T. CUMMINGS, APPELLEE.

FILED MAY 17, 1913. No. 17,240.

1. **Conversion.** An action for conversion will not lie for the disposition of property which the plaintiff has authorized. If he has an action, it is for the price or value of the property.

2 ———: **Proof.** In such a case, in order to recover the value of the property, the plaintiff is required to prove that defendant expressly or impliedly agreed to pay him the purchase price, or the market value thereof.

3. **Trial:** DIRECTING VERDICT. Where the evidence will not sustain a verdict for the plaintiff, it is the duty of the trial court to direct the jury to return a verdict for the defendant.

APPEAL from the district court for Gage county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*E. O. Kretsinger* and *Ernest L. Kretsinger,* for appellant.

*Hugh J. Dobbs, contra.*

BARNES, J.

Action commenced in the district court for Gage county to recover a sum of money alleged to be due plaintiff from the defendant for the sale or conversion of certain capital stock of a corporation, known as the "M. T. Cummings Milling Company." At the conclusion of the trial the court below directed a verdict for the defendant, and the plaintiff has appealed.

It appears, without dispute, that in the month of October, 1901, the plaintiff and the defendant, together with certain other persons, organized a corporation, under the laws of this state, for the purpose of purchasing a mill and water-power at Blue Rapids, Kansas, to be operated in manufacturing corn products. It was provided by the articles of incorporation that the capital stock of the

company should be $30,000, divided into equal shares of $100 each, of which one-fourth was required to be issued and fully paid up at the time the business was commenced. It was also provided that all of the stock should be common stock, nonassessable, and transferable on the books of the company. Subsequent to organization, and at the date when the company began active operations as a manufacturing concern, the amount of $16,500 of stock had been issued and paid for at par. Of this stock the plaintiff became the owner of 10 shares of $100 each. From the proceeds of the sale of the stock, the milling company, in 1902, purchased a mill site, mill house, water-power and power-rights at Blue Rapids, Kansas, repaired and remodeled the mill house, flume, sea walls, and other appurtenances to said property, and installed new milling machinery necessary for their purposes, of the latest and best type. This was connected up to the power, and in the autumn of 1902 the mill was put into successful operation as a manufacturing plant. The power for the operation of the mill, as well as for the operation of a number of other milling and manufacturing plants, was supplied by a large and well-constructed stone dam across the Blue river, which had been in successful operation for more than 35 years. Thus the venture of the milling company appeared to lack no essential element of complete success.

It further appears that during the first week of June, 1903, there occurred a great flood, which inundated the entire valley of the Big Blue river from its source to its mouth. In volume of water, duration, force, and destructiveness, this flood was unparalleled in the known history of that country. It practically destroyed the property of the milling company. It washed out and destroyed the switch track connecting the property with the Union Pacific railroad, nearly a mile away, and the railroad company refused to rebuild the switch. This required the milling company to depend upon wagons for the transportation of its products and all other freight to and from the railway station, a distance of three-fourths of a mile.

In addition, the country road leading to the mill was destroyed, making access to the property difficult to the farming community. .Great damage was wrought to the mill house, the flume, and machinery, and, in addition, a large amount of grain in bins and manufactured products on hand were lost and damaged or totally destroyed. At the time of this disaster the milling company was indebted to the First National Bank of Beatrice on its promissory note, which, with interest, amounted to something over $5,500, an indebtedness which had been incurred by the company to enable it to operate its mill. It further appears that the effect of the flood was to cut a new channel for the river some distance up the stream from the point where the company's property was situated, and above the stone dam, leaving that structure high and dry without water, so that the power by which the mill had been operated was completely destroyed. The milling company was thus left without assets of any kind to meet its indebtedness, except such as could be realized out of the wreck of its property. Soon after this disaster the defendant, as the principal stockholder, president of the board of trustees, and manager of the property, endeavored to sell it for a sum sufficient to discharge the company's debt to the bank. For over a year the proposition to sell the property was extensively advertised in various milling journals, and by other means, all of which resulted in a failure to make such a sale. Finally, the defendant took up the matter of adjusting the debt in some way with the. other stockholders of the company, and on or about the 23d day of August, 1904, he wrote to the members of the company, including the plaintiff, advising them of the necessity of devising some means of paying the debt. Amongst the plans suggested was a surrender to him of the stock in consideration of his assuming and paying the debts of the company. Some time in the year 1904 the township in which the city of Blue Rapids is situated voted to issue its bonds in the sum of $20,000, and use the proceeds thereof in an effort to redivert the Blue river to

its ancient channel, and thereby retrieve, to some extent, the misfortune which the whole community and surrounding country, equally with the milling company, had suffered from the flood. The work was put under way in 1904, and completed in 1905, with a fair prospect that restoration of the power to the stone dam would be effective and permanent. Under these circumstances the defendant was able to interest Mr. F. B. Draper and Mr. W. E. Bryson, of Adams, Nebraska, in his milling company, and finally reached an agreement by which they were to join him in taking over all of the stock of the company on the basis of the assumption and payment of the indebtedness of the old company above described.

On June 8, 1905, defendant wrote, addressed and mailed a letter to the plaintiff, advising him of this arrangement, stating, among other things, that all the stockholders had assigned their stock to him, or were willing to do so, on condition that he pay the company's debt to the bank, and renewing his request for the assignment of plaintiff's stock on those conditions. Plaintiff thereafter delivered his stock to the defendant. The new company was organized, and the mill was repaired and put in operation. The property was leased to one Ed S. Miller, and in May, 1906, the mill house, with its contents, was totally destroyed by fire.

The plaintiff, by his amended petition, sought to recover the value of the stock which he delivered to the defendant, on the theory that the defendant wrongfully converted it to his use, or agreed to pay the plaintiff his money therefor as soon as the mill was put in operation. Defendant demurred to the amended petition on the ground that the facts stated did not constitute a cause of action. The demurrer was overruled, and the objection thus raised was kept good at all stages of the trial. The answer was, in effect, a general denial.

Several reasons are assigned for a reversal of the judgment of the district court. A consideration of the assignment that the court erred in directing the jury to return

a verdict for the defendant is sufficient to dispose of the case without passing upon the other question presented by the record.

The bill of exceptions shows that plaintiff gave no testimony showing, or tending to show, that his stock was obtained from him by any false pretext, but that it was obtained by defendant for the purpose of organizing a new corporation, and that it was used for that purpose. His testimony, in part, is: "He (meaning the defendant) requested me, and asked me, if I would be willing to turn it (the stock) over to him if he got a couple of men to go in with him and start the mill again, that was after it was flooded, you know, and I consented to it. * * * Well, he asked me if I would be willing to let him have it in his possession so he could start the new mill, and I consented to it rather than leaving the mill standing idle. I gave the stock to him on these grounds. He was to have it in his possession until he started the new mill, and I expected the money out of it then. * * * Well, he requested me to bring the stock when I came up town, and I brought the certificates and handed them to him, with the understanding—I had the understanding—I was to get my money out of them. Q. Mr. Coulter, when you took the stock to Mr. Cummings, what did Mr. Cummings say about the stock? A. When I handed it to him? Q. Yes. A. Well, he thanked me for it. I said, I expected to get my money for it when he got to running the mill. * * * He said it would be doubtful. He said, if there was any money to be got out of a water-mill, he had yet to see it."

As we view the plaintiff's own evidence, he failed to make out a case against the defendant for the conversion of stock. To maintain an action for conversion of chattels, a party must have actual possession of the property, or the right to immediate possession. Code, sec. 182; *Raymond Bros. & Co. v. Miller,* 50 Neb. 506; *Hill v. Campbell Commission Co.,* 54 Neb. 59; *Thompson & Sons Mfg. Co. v. Nicholls,* 52 Neb. 312. Plaintiff failed to

testify that he was entitled to the possession of the stock in question at the time the action was begun. He produced no evidence that he ever demanded possession of the stock, or requested the defendant to pay him anything as the purchase price thereof. His testimony, and the allegation of his petition, contradict and refute the theory of a wrongful conversion of his stock by the defendant. Conversion in law is unauthorized dealing with the goods of another by one in possession, whereby the nature or quality of the goods is essentially altered, or by which one having the right of possession is deprived of all substantial use of his goods, temporarily or permanently. *Herrick v. Humphrey Hardware Co.,* 73 Neb. 809; *Aylesbury Mercantile Co. v. Fitch,* 22 Okla. 475, 23 L. R. A. n. s. 573. It follows that the authorized use of the property by the defendant in this case will not support an action for conversion. In *Carlson v. Jordan,* 4 Neb. (Unof.) 359, it was said: "No action for conversion will lie on account of a disposition of property which plaintiff admits authorizing. If he has an action, it is for the price of the property."

Again, in order for the plaintiff to recover the value of his stock, it was necessary for him to show, by some competent evidence, that the defendant had promised to pay him its value when the mill was again in operation. The evidence contains no such promise. Plaintiff did not testify that the defendant ever agreed to pay him the value of the stock. He testified that, in answer to his assumption that he was to receive the money for his stock, the defendant said: "It would be doubtful  *  *  *  if there was any money to be got out of a water-mill." It seems idle to assert that this amounted to a promise to pay the plaintiff anything whatever for his stock. Again, we find no testimony in the record from which the value of the stock, if it had any value whatsoever, can be ascertained. On the other hand, it seems clear from the undisputed facts contained in the record that plaintiff's stock has no value whatever.

As we view the record, no other verdict than the one which was returned under the direction of the court could have been sustained, and therefore the judgment of the district court is

AFFIRMED.

REESE, C. J., FAWCETT and SEDGWICK, JJ., concur.

LETTON, ROSE and HAMER, JJ., not sitting.