ALBERT E. LEBS, ADMINISTRATOR, APPELLANT, V. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, APPELLEE.

FILED MARCH 2, 1933. No. 28431.

*Rait & Kuppinger,* for appellant.

*Cleary, Horan & Skutt,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This is an action to recover for accidental death under

the provisions of an accident policy. It is alleged by the plaintiff that the insured died on or about the 16th day of July, 1928, as a result of an "accidental gunshot wound and by accidentally wandering and falling into the Missouri river." The answer of the insurance company denies these allegations. The plaintiff appeals from a judgment entered upon a verdict in favor of the defendant.

The plaintiff complains that the court erred in giving certain instructions relating to the alleged shooting, in which the jury were told that a brawl or altercation between an insane father and his son would have some bearing upon the question as to whether or not the shooting, if any, was accidental. This instruction is erroneous for the reason that it submitted the question to the jury as to whether or not there was a brawl or altercation between the insured and his insane father, when there is no evidence in the record upon this question. The sole evidence as to what occurred is testimony of a witness to the effect that deceased said immediately after visiting the father's home that his father shot him. The learned trial judge was in error in submitting this question to the jury. The instructions of the court should direct the jury's attention only to issues of fact supported by evidence. *Trute v. Holden,* 118 Neb. 449; *Stiefler v. Miller,* 120 Neb. 6.

Complaint is made to the giving of another instruction to the effect that, if the insured committed suicide, his death was not accidental within the terms of the policy. This instruction is criticized on the theory that the defense of suicide is an affirmative defense. The appellant relies upon *Michalek v. Modern Brotherhood of America,* 179 Ia. 33, which holds (161 N. W. 125): "In an action upon a certificate of life insurance, defense of suicide, an expressly excepted risk, is an affirmative defense, the burden of establishing which by proof of facts excluding every reasonable hypothesis of natural death is upon the insurer." However, in an action on an accident policy

to recover for accidental death, the burden is upon the plaintiff to establish such death. Evidence of suicide would tend to disprove accidental death. The only evidence from which a possible inference of suicide might be drawn was introduced by the plaintiff. The woman with whom the deceased boarded testified that he left a note which she had lost, and that it said: "He can't stand it any longer, tell his brother too. Good bye. That is all." In passing, it is significant that this witness could not read, and it is not disclosed how she acquired knowledge of the contents of the alleged message. The evidence in this record is not sufficient to support a finding upon this issue of fact, and, for that reason, the instruction should not have been given.

Do the instructions erroneously given require reversal of the judgment in this case? The burden of proof was upon the plaintiff in this case to establish that the insured was dead and that his death was the result of an accident. *Dodder v. Aetna Life Ins. Co.*, 104 Neb. 70. A brief summary of the evidence relating to the alleged accident would be helpful. A nephew testified that he went to the house, where the insured boarded, on the day after his disappearance; that he examined some tracks, and went over to the place where the father of the insured lived, nearby; that he examined the house, but could not find any bullets in the house; that he examined the driveway that ran by the house to the river. He also said: "I found tracks leading up part way in the driveway. It seemed as though they went so far and went back again, just to the end of the driveway, between the driveway and the street, I found a spot of blood there. * * * The grass looked as though somebody had fallen on it or been laying on it; it was down, see?" He testified also that the blood spot was six to eight inches in size; that he tried to follow the tracks, but could not go any farther on account of the grass in the road; that the tracks resembled the insured's tracks because of a peculiar worn spot in the sole; that he went back to the

house where insured lived and picked up the tracks and found there was the same worn spot there; that he traced them down over the dike; that he could not trace them any farther on account of the grass; that he went on down toward the river trying to pick up the tracks again; that he found tracks, but could not identify them; and that the father of the deceased had a gun.

The woman with whom the insured boarded testified that the insured went over to his father's house and she heard shooting; that the insured came home and "told me he got shot; his father shoot him;" that he was over to his father's house about 30 minutes, after which he left for a few minutes to see his brother who lived at a short distance. This witness also testified that deceased came home and went to bed with his clothes on, where he remained for the rest of the day; that she thought he was feverish; that he got up about 9 o'clock in the evening and went out of the house and came back in again later, and that she never saw him again, and that she got up about 1 o'clock and found he was not there; that at about 3 o'clock she looked around the yard and searched along the river with her dog, but could not find him; that she saw neither a wound nor blood on his clothes; and that no doctor was called. The testimony of these witnesses is relied upon by plaintiff to support the allegations of the petition that the plaintiff was accidentally shot and that he died as a result of said accident.

This evidence is not sufficient to establish that the insured died as the result of an accidental injury. In the first place, it must have been proved that the insured was injured accidentally. Assuming that he was shot, a fact upon which the evidence is not satisfactory, it must be presumed that it was accidental. Upon this presumption must be developed the presumption that he is dead and under the terms of the policy died within 13 weeks, and that the injury was the cause of his death. The testimony of the witness who cared for him the day of

the alleged shooting saw no blood on his clothing and saw no bullet wound. She testified that he was up and walked about during the day and walked out of the house 12 or 15 hours after the shooting. The next presumption necessary to be indulged in to permit a recovery is that the insured was delirious as a result of an accidental wound and while in such condition walked into the nearby river and was washed away. There is neither evidence to establish that the insured is dead nor evidence from which an inference of death may be drawn. The right to recover in this case rests upon the presumption that insured is dead; that he be presumed to have died within 13 weeks of the time he is presumed to have been accidentally shot. It is a well-established rule that presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference. *Poweshiek County v. Merchants Nat. Bank,* 209 Ia. 467. This evidence is not sufficient to support a verdict in favor of the plaintiff, and the verdict returned by the jury for the defendant was the only one permissible under the law and the evidence. It is the well-established rule that, where the verdict of the jury is the only one which the evidence will support, erroneous instructions are not prejudicial. *Ramold v. Clayton,* 77 Neb. 178; *Dodder v. Aetna Life Ins. Co.,* 104 Neb. 70. The record presents a case in which the evidence is not sufficient to support a verdict of the jury, and the trial court should have sustained the motion of the defendant for a directed verdict, after the evidence had been submitted. *Swett v. Antelope County Farmers Mutual Ins. Co.,* 91 Neb. 561; *Coulter v. Cummings,* 93 Neb. 646.

Since the verdict of the jury was the only one which could have been returned which would have been supported by the evidence, the plaintiff was not prejudiced by the giving of instructions which found no support in the evidence.

The judgment of the trial court is

AFFIRMED.