THOMAS W. BURCHMORE, APPELLEE, V. H. M. BYLLESBY & COMPANY, APPELLANT.

1 N. W. (2d) 327

FILED NOVEMBER 28, 1941.   No. 31205.

*Brown, Crossman, West, Barton & Fitch* and *Edward A. Nelson,* for appellant.

*Peter & Dalton* and *M. L. Donovan, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action to recover damages for the alleged conversion by Richard R. Blissard, a sales representative of the defendant, of a certificate of stock of the Fairmont Creamery Company belonging to Mary L. Burchmore. The plaintiff is an heir of, and assignee of, the claim from the estate

of Mary L. Burchmore. The defendant is an investment banking house.

The defense was that Blissard acted as an independent dealer in the sale of the stock; that defendant neither handled the stock nor received the proceeds; and had no knowledge of the transaction until after Mrs. Burchmore's death; that the action was barred by the statute of limitations, and that Mrs. Burchmore was negligent in the handling of the transaction, and plaintiff was estopped to maintain the action.

Defendant's motion for a directed verdict at the close of the trial was overruled. The jury found for the plaintiff. Defendant appeals.

The defendant is a corporation described as a banking investment house dealing generally in securities such as those involved in this action.

Blissard was a sales representative of the defendant from August 15, 1929, to January 31, 1934, and thereafter operated his own business as an independent dealer until his death February 11, 1938. By the terms of his employment Blissard was required, while employed by defendant, "to devote his entire energies" to the sale of defendant's securities, and all his transactions were to be subject to defendant's approval and for its account.

Mary L. Burchmore, who died January 20, 1938, was a customer of defendant during the time Blissard was employed by defendant, and Blissard generally handled her transactions with defendant. After he established his own business Mrs. Burchmore became his customer. In her will, executed September 23, 1931, Mrs. Burchmore named Blissard as executor. He made out her 1932 tax return. In December, 1935, she gave him access to her safety deposit box and in November, 1937, she gave him power of attorney to issue checks against her bank account.

Mrs. Burchmore became the owner of the stock involved in March of 1930. May 16, 1933, Blissard telephoned Buffett & Company, an investment house, and asked for an offer on the stock, received one, and some minutes later

called again and accepted the offer and agreed to deliver the stock to the Fairmont Creamery Company. That he did. The stock, when delivered, is referred to as "in bearer form," *i.e.*, it bore the signature of Mrs. Burchmore to an undated assignment in blank, witnessed by Blissard, and a guaranty by a bank official of Mrs. Burchmore's signature. The Fairmont Creamery Company verified the possession of the certificate to Buffett & Company, and Buffett & Company on the same day issued its check to Blissard in payment, and issued written confirmation of the sale and mailed it to "Bud Blissard" in care of the defendant. The record is silent as to where or when Mrs. Burchmore assigned the stock, where or when Blissard witnessed her signature, and where or when the bank official guaranteed her signature. It is likewise silent as to how or where Blissard came into possession of the stock or what his rights or instructions were in regard to the same. It is admitted that Blissard received the stock from Mrs. Burchmore about May 10, 1933. The record is likewise silent as to what disposition was made of the proceeds of the check. Blissard indorsed the check. It was paid by the bank on which it was drawn. Save such as may be inferred from his indorsement, there is no evidence that Blissard received the proceeds. Neither is it shown whether or not Mrs. Burchmore received the proceeds. In the bank where she kept a checking account at the time of this sale and immediately following, no deposit was made of a sum comparable to that for which the stock was sold.

After Mrs. Burchmore's death, there was found among her papers in her safety deposit box the following receipt:

> "Richard R. Blissard      Original
> "Investment Securities
> "1006 First National Bank Bldg.    2-28-1934
> "Omaha, Nebr.
> "Received of Mrs. John Burchmore
> 31 shs Fairmont Crmy. 6½% Pfd #P4056
> 10 shs U. Stock Yards Omaha Com Certf #2867
> "(Signed) R. R. Blissard"

This receipt, referred to as "Exhibit 18," will be discussed later herein. The circumstances under which it was issued are not shown. That it does refer to the stock involved in this action is not disputed.

The purchaser of the stock described Blissard as a "recognized dealer." At no point in the handling of the stock sale was Mrs. Burchmore disclosed to Buffett & Company as the owner of the stock, nor was the defendant in any way involved in the transaction, except such connection as may be inferred from the fact that Blissard was its sales representative and the confirmation was mailed to Blissard in care of the defendant. There is no evidence that the stock was ever in defendant's place of business or in the possession of any of its representatives other than as herein set out.

Defendant details in the evidence the complete method of handling the purchase of stock, beginning with the receipt issued to the seller in the Omaha office to and including confirmation notice mailed direct to the seller from defendant's Chicago office. It is patent that the sale of this stock was not handled by the defendant as all of its transactions were regularly handled and as its transactions were handled over a period of time for and with Mrs. Burchmore.

Mrs. Burchmore received from the Fairmont Creamery Company some 13 quarterly dividends of $50.38 each on this stock. The last one was for April 1, 1933. Included in the last five remittances were small dividend payments on common stock. After April 1, 1933, she received some 18 payments of small quarterly dividends of from $5 to $10 on her common stock with the Fairmont Company.

From the date of the sale of her stock by Blissard, May 16, 1933, to the date of her death January 20, 1938, Mrs. Burchmore made no inquiry of the defendant regarding this stock and presented no claim to the defendant based upon an alleged conversion of this stock or otherwise. Neither did she ever contend to the Fairmont Company, to Buffett & Company, or to any one else that the stock had been converted or wrongfully handled by them or Blissard.

The defendant had no notice of this transaction until after the death of Mrs. Burchmore. After her death and Blissard's death, her heir has attempted to piece together his theory of what happened. The action herein appears, from the court's instructions to the jury, to have been filed August 19, 1939.

Defendant, by appropriate assignments of error, assails the judgment on the grounds that the evidence establishes that Blissard sold the stock as an individual dealer and for Mrs. Burchmore; that the evidence does not establish a conversion of the stock by Blissard; that the action is barred by section 20-207, Comp. St. 1929; and that the trial judge erred in the admission in evidence of exhibit 18 for any purpose.

Plaintiff to sustain the judgment contends that where an agency exists and the principal is disclosed, and the act was within the scope of the agent's authority, it will be presumed that it was done in behalf of and with the intent to bind the principal; that the burden rests upon the defendant to establish its affirmative defense that Blissard acted in his private capacity; that a principal who puts an agent in a position to commit a fraud is liable to the defrauded person where the act is done within the scope of his authority; and that whether or not Blissard was acting for his principal within the scope of his authority or for himself individually is a question of fact for the jury.

Upon what theory can a judgment for the plaintiff be sustained?

The problem here is not one of disputed facts but rather disputed conclusions drawn from those facts. A court is not at liberty to conjecture, nor a jury to imagine, the facts which appear to have been known only by Blissard and Mrs. Burchmore. Their lips are sealed by death. More than conjecture and imaginings is necessary to sustain a judgment requiring one party to pay money to another.

If a wrongful act was committed by any one, it was done by Blissard (and that can only be a surmise based upon the fact that there is no proof that he accounted to

Mrs. Burchmore for the proceeds of the sale and upon the fact that he issued a receipt for the stock dated February 28, 1934, long after he had sold it and did not have it in his possession). But Blissard is not a party to this action, and he is beyond the judgment of an earthly court. True, Blissard was the trusted employee of the defendant. It is likewise true that Mrs. Burchmore trusted him in her personal affairs as pointed out in the statement of facts recited heretofore.

Mrs. Burchmore placed this stock in the possession and control of Blissard, so indorsed as to permit him to sell it and receive the proceeds in the ordinary course of trade. Did she, in doing that, place it in the hands of Blissard personally or as an agent of the defendant? Blissard agreed to devote his "entire energies" to the service of the defendant and for its account, but that he did not do so is patent from this record. This, moreover, is clear from the record. From May, 1933, to her death in January, 1938, Mrs. Burchmore made no inquiry of defendant as to what disposition had been made of her stock, and why it had not been handled as her other transactions with defendant had been handled; nor did she advise defendant that she considered she was dealing with it and was looking to it for an accounting of the proceeds of the sale. Had she been dealing with the defendant, ordinary business prudence would have dictated such a course, but she did not take it.

Mrs. Burchmore had been receiving substantial dividends on the stock from the Fairmont Creamery Company. These stopped in the summer of 1933; yet she made no inquiry of the Fairmont Company to determine why, when a mere inquiry of that company would have disclosed that her stock had been sold by Blissard and that he had been paid its value. The conclusion is inescapable that Mrs. Burchmore trusted and looked to Blissard and Blissard alone in this transaction, and that it was either for his personal benefit or the benefit of Mrs. Burchmore.

In *Division No. 1, Railway Employees' Department, A. F. L., v. American State Bank,* 113 Neb. 196, 202 N. W.

632, this court approved the following statement of law: "A principal is liable to third parties for the torts of his agent when committed in the course and within the scope of the agency, although the principal never authorized, participated in or ratified the tort; but he is not liable where the tortious act was committed, not in furtherance of the principal's business, but for a purpose personal to the agent himself." Under this principle and the undisputed facts, the defendant is not liable.

Clearly, the case was pleaded and tried upon the theory that it was an action for the conversion of the stock, and under accepted rules that is the view which this court on appeal must take of the issue. Plaintiff here however presents the case as one of conversion of the proceeds of the sale.

Did plaintiff prove a conversion of the stock by Blissard? The amended petition alleges that on or about May 10, 1933, the defendant by and through Blissard "came into possession" of the stock certificate. Defendant by oral statement made at the opening of the trial admitted that on or about May 10, 1933, Blissard received the certificate from Mrs. Burchmore, "the owner thereof." But, as has been pointed out, the record is silent as to where, how, or under what conditions he received it. Was he to sell it, hold it for safe-keeping, or did he have any rights of property in it? Was it secured under any false pretext? The record contains no evidence on any of these matters.

In *Coulter v. Cummings*, 93 Neb. 646, 142 N. W. 109, this court reviewed an action brought to recover for the sale or conversion of capital stock of a corporation. Plaintiff had turned his shares of stock to the defendant. It was there held: "To maintain an action for conversion of chattels, a party must have actual possession of the property, or the right to immediate possession." Did Mrs. Burchmore have the right to the immediate possession of this certificate of stock when Blissard sold it? This record contains no evidence on that proposition. In *Coulter v. Cummings, supra*, it was further said:

"Plaintiff failed to testify that he was entitled to the possession of the stock in question at the time the action was begun. He produced no evidence that he ever demanded possession of the stock, or requested the defendant to pay him anything as the purchase price thereof. Conversion in law is unauthorized dealing with the goods of another by one in possession, whereby the nature or quality of the goods is essentially altered, or by which one having the right of possession is deprived of all substantial use of his goods, temporarily or permanently. * * * In order for the plaintiff to recover the value of his stock, it was necessary for him to show, by some competent evidence, that the defendant had promised to pay him its value."

(Syllabus) "An action for conversion will not lie for the disposition of property which the plaintiff has authorized. If he has an action, it is for the price or value of the property.

"In such a case, in order to recover the value of the property, the plaintiff is required to prove that defendant expressly or impliedly agreed to pay him the purchase price, or the market value thereof."

Was Blissard's sale of the stock "unauthorized" by Mrs. Burchmore? Did Blissard promise to pay Mrs. Burchmore the value of the stock or the proceeds from the sale? The evidence does not establish an unauthorized sale nor a promise to pay Mrs. Burchmore either the value of the stock or the proceeds of the sale.

The conclusion is inescapable that plaintiff has not proved the conversion upon which his cause of action is based.

Section 20-201, Comp. St. 1929, provides: "Civil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued."

Section 20-207, Comp. St. 1929, provides: "Within four years, an action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated;

an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The rule early adopted and long followed by this court is: "An action for relief on the ground of fraud must be commenced within four years after the discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery." *Rucker v. Ward,* 131 Neb. 25, 267 N. W. 191. Again, in *Sweley v. Fox,* 135 Neb. 780, 284 N. W. 318, this court said: "If the fraud or mistake ought to have been discovered, and would have been if reasonable diligence had been exercised by the plaintiff, the statute will run from the time such discovery ought to have been made, for a plaintiff cannot excuse delay in instituting suit of his cause of action if his failure to discover it is attributable to his own neglect. 17 R. C. L. 858, sec. 218; 44 A. L. R. 78, Ann.; 106 A. L. R. 1338, Ann." Under the issues as made up in this case, the burden was upon the plaintiff to prove facts that avoid the bar of the statute. *Baxter v. National Mtg. Loan Co.,* 128 Neb. 537, 259 N. W. 630. Did Mrs. Burchmore know of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to such discovery? Was the failure to discover the fact of the sale of her stock attributable to her own neglect? This record shows that Mrs. Burchmore had a considerable sum invested in, and that she bought and sold, securities. It shows that she knew how these transactions were handled. She assigned this stock so that it was possible for Blissard to sell it and do exactly what he did do. Why she did it or for what purpose no one knows. If, as plaintiff contends, it was placed in Blissard's hands to sell as a representative of the defendant, then she must have known, from the handling of her other business, that within a few days at most she should have received from the defendant a confirmation of the sale and a remittance of the proceeds. But she received no such confirmation and no such re-

mittance and for over five and a half years made no investigation and no inquiry. Certainly, a person of ordinary intelligence and prudence would have made that inquiry; even more so would one who had bought and sold such securities have made that inquiry. Nor can it be disputed that that inquiry would have caused to be revealed the fact that defendant had no part in the transaction and that Blissard had sold her stock and received payment. Clearly, that inquiry ought to have been made and the discovery could have been made in the summer of 1933. There is nothing in this record to indicate that the defendant's managing officers knew, or in the exercise of reasonable diligence could have discovered, the facts of this transaction.

Mrs. Burchmore had been receiving regular quarterly dividends on this stock. Those dividends stopped July 1, 1933. Would not a person of ordinary intelligence and prudence have inquired of the Fairmont Company as to why the dividend was not received? Should not such an inquiry have been made in July of 1933? Clearly, it would have revealed the sale of this stock by Blissard and that he had received payment therefor. Here again, under the undisputed facts and the law, the conclusion is clear that this action is barred by the statute of limitations for the failure of Mrs. Burchmore to institute proceedings within four years after the acquisition of knowledge of facts sufficient to put her on notice. 

But plaintiff argues that exhibit 18 establishes the fact that Blissard perpetrated an unlawful concealment upon Mrs. Burchmore and that the concealment continued until her death.

Exhibit 18 was admitted by the court, over fully and amply stated objections of the defendant, for the purpose of showing that Mrs. Burchmore did not know as of February 28, 1934, that the stock had been sold by Blissard. It is Blissard's own receipt on his own form purportedly issued from his own place of business. It does not show when he received the stock or the condition under which

he received it. At most, it is but Blissard's admission that he had received the stock, a fact which was admitted at the beginning of the trial. It in no way refers to, binds, or attempts to bind, the defendant. Assuming that it was issued when dated, exhibit 18 was signed by Blissard a month after the termination of his employment with the defendant. Admittedly Blissard at that time had no authority to act for the defendant. The receipt does not purport to be the receipt of the defendant. It may indicate that Blissard had not paid Mrs. Burchmore the proceeds of the sale of the stock; it may indicate that he had concealed the sale from her; it may indicate that he represented to her that he had the stock at that time; it may also indicate that Mrs. Burchmore was at that time continuing to trust Blissard and look to him for its safe-keeping; but these are all conclusions which, if determined at all, must be arrived at from the study of the instrument itself unaided by any evidence as to the circumstances under which it was issued or how it came into the possession of Mrs. Burchmore. If the purpose and effect of the receipt were to deceive Mrs. Burchmore and conceal from her the sale of the stock, it was a purpose which Blissard had and an effect which he achieved for and on his own behalf, and not for and on behalf of the defendant, for whom he had no authority to act at that time. If exhibit 18 is proof of concealment it was Blissard's act of concealment, and not the act of the defendant.

Wherein is exhibit 18 admissible in an action against the defendant? The rule is that "An admission made before the declarant was employed as the agent of the party against whom it is sought to be used or after such employment had terminated cannot be received." 22 C. J. 380. "An agent's statement is not binding upon his principal as an admission unless it is made within the scope of his real or apparent authority, during the continuance of his agency and while in the discharge of a duty thereunder." 20 Am. Jur. 505, sec. 596. See, also, *Ellison v. Albright,* 41 Neb. 93, 59 N. W. 703; *Waits v. Columbia Fire Underwriters Agency,* 129 Neb. 207, 261 N. W. 170.

The trial court erred in admitting exhibit 18 in evidence. But even if admissible, exhibit 18 is of no assistance to the plaintiff. On the plaintiff's theory, two inferences must be drawn from it: One, Mrs. Burchmore was on February 28, 1934, inquiring of Blissard as to the whereabouts of her stock; two, Blissard fraudulently concealed from her the fact that he had sold her stock and represented to her that he had the stock in his possession.

As to the first, if this inference is true, then almost four years before her death and more than four years before the beginning of this action Mrs. Burchmore was not only put upon inquiry, but was actually inquiring, as to her stock. It does not appear to be questioned that, where the statute began to run as against Mrs. Burchmore, it continued to run as against the plaintiff after her death. See *Carden v. McGuirk,* 111 Neb. 350, 196 N. W. 698.

As to the second, while it may be argued that Mrs. Burchmore was persuaded by Blissard in February, 1934, that he had her stock in his possession at that time, yet the undisputed evidence shows, as has been pointed out, that in 1933, some months before the date of this receipt, Mrs. Burchmore was clearly put on notice of facts which, if investigated, would have revealed the fact that her stock had been sold by Blissard and that he had been paid for it. After the statutory period had begun to run against Mrs. Burchmore, could Blissard as an individual and the alleged wrong-doer, stop the operation of the statute by giving assurance that the alleged conversion had not taken place? The rule well supported by reason and authority is that "Restatements of the fraudulent representation do not of themselves constitute concealment, and where a party is once put upon notice of fraud he cannot avoid the consequences of his constructive knowledge of the fraud nor fulfil his duty to investigate by going to the party he suspects of the fraud. He cannot desist from further investigation because he is reassured of the truth of the original representations." *Feak v. Marion Steam Shovel Co.,* 84 Fed. (2d) 670, 107 A. L. R. 583. "One who has knowledge

of the perpetration of a fraud against him cannot thereafter claim that concealment of the fraud suspends the running of the statute. And further, one who has notice of a fraud perpetrated upon him sufficient to put him on inquiry cannot remain inactive and rely upon concealment to stay the statute. Instead he must exercise such care and make such effort to ascertain the facts regarding the perpetrated fraud as in the exercise of reasonable care and diligence he could and should make." *Chalker v. Fidelity & Deposit Co.,* 268 Mich. 333, 256 N. W. 343. See, also, *Phillips v. Baker,* 114 S. W. (2d) (Tex. Civ. App.) 421; *Brackett v. Perry,* 201 Mass. 502, 87 N. E. 903; *Skrodzki v. Sherman State Bank,* 348 Ill. 403, 181 N. E. 325.

We are mindful of the fact that on the questions of agency, conversion, and running of the statute of limitations the jury found for the plaintiff. However, it has long been the rule of this court that "A verdict of a jury whose finding is based upon conjecture and not on the evidence cannot be permitted to stand." *Sovereign Camp of the Woodmen of the World, v. Hruby,* 70 Neb. 5, 96 N. W. 998. Defendant moved for an instructed verdict. In *Fairmont Creamery Co. v. Thompson,* 139 Neb. 677, 298 N. W. 551, this court said: "It is the duty of a trial court to direct a verdict at the close of the evidence where the evidence is undisputed, or where evidence, though conflicting, is so conclusive that it is insufficient to sustain a verdict and judgment." The trial court should have directed a verdict for the defendant.

The judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.