PETERS TRUST COMPANY, APPELLEE, V. ROBERT CRANMORE
ET AL.: ARTHUR J. ABBOTT, APPELLANT.

FILED APRIL 9, 1926.   No. 23903.

Equitable Estoppel. "To constitute an equitable estoppel, there must
exist a false representation or concealment of material facts;
it must have been made with knowledge, actual or constructive,
of the facts; the party to whom it was made must have been
without knowledge or the means of knowledge of the real facts;
it must have been made with the intention that it should be
acted upon; and the party to whom it was made must have re-
lied on or acted upon it to his prejudice." *Walker v. Ehresman,*
79 Neb. 775.

APPEAL from the district court for Garden county: P. J.
BARRON, JUDGE. *Affirmed.*

*Daniel F. Osgood, C. E. Sanden* and *E. H. Boyd,* for ap-
pellant.

*T. B. Dysart, J. P. Moore, Jr.,* and *T. B. Murray, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD,
THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.
Plaintiff filed a suit in the district court for Garden coun-
ty to foreclose a real estate mortgage which, on the records
of that county, stood as a first lien upon the lands described
in the petition.   The mortgage was executed March 29,
1918, by Robert Cranmore and James Cranmore, who were
the owners of the real estate.   Subsequent to the execution
of the mortgage, the Cranmores conveyed the land, subject
to plaintiff's mortgage, to Thomas J. O'Neil.   And Mr. and
Mrs. O'Neil, as a part of the purchase price, executed and
delivered to the Cranmores a second mortgage covering the
premises.   Subsequently, Mr. and Mrs. O'Neil executed a
mortgage, covering the same premises, but subject to the
mortgages theretofore existing, in favor of Arthur J.
Abbott.   All conveyances were placed of record in the

order of their execution.    Prior to the bringing of this suit, the note and mortgage executed and delivered by O'Neil to the Cranmores had been sold and assigned to Christopher J. Abbott, and O'Neil and wife had conveyed by deed all their interest in the real estate to Arthur J. Abbott in consideration of his canceling and surrendering up notes and mortgages which they had theretofore executed to him.    In this transaction Arthur J. Abbott not only released O'Neil from further liability because of the mortgage he held against the land involved in this suit, but he likewise released and surrendered up chattel securities.

Arthur J. Abbott filed a separate answer and cross-petition in which he alleged, so far as it is necessary to set out the allegations here, that he was the owner of the last mortgage executed by O'Neil; that before accepting a deed to the land from O'Neil, and surrendering up the notes and mortgages which he then held, he employed Mr. Mann, a banker of Hyannis, Nebraska, to write plaintiffs "regarding a release of the mortgage of plaintiff upon the lands;" that Mr. Mann wrote plaintiff a letter in the following terms:

"March 13, 1923.

"Peters Trust Company, Omaha, Nebr.

"Gentlemen:

"About 5 years ago we commenced negotiations for a real estate loan from two parties by the name of Cranmore (brothers).    My correspondence shows that this loan was not consummated, and as there is a mortgage on file in Garden County in your favor on this land, would you kindly look up the matter, and let me know definitely about the matter.

"If you are holding no lien against this land which did belong to the Cranmores will you sign a release of the mortgage on file providing one is forwarded to you?

"Your answer will be much appreciated.

"Yours very truly,

"J. W. Mann."

That in response to the letter written by Mr. Mann, plaintiff, through its loan supervisor, wrote the following letter:

"April 16th, 1923.

"25502—Robert Cranmore.

"Mr. J. W. Mann, Hyannis, Nebr.

"Dear Sir:

"Your favor of the 13th at hand relative to our releasing a mortgage in the above named case.

"Our files show that we drew mortgage papers here but they were canceled and the executed note and mortgage were never sent to us. We have nothing to prepare a release from. If you will send us the mortgage, which you state is recorded, we will be pleased to have the release prepared.

"Yours very truly,

"J. O. Wentworth, Loan Supervisor."

That defendant relied upon the statements contained in the letter written by plaintiff's loan supervisor, and, so relying, accepted from O'Neil a deed to the land, subject to all incumbrances of record, and released O'Neil of all debts then owing to defendant, in the sum of $12,682.21, and released all securities which defendant held which had been pledged by O'Neil for the payment of his debt; that the indebtedness due upon the second mortgage, the mortgage then held by Christopher J. Abbott, and the indebtedness due to defendant Arthur J. Abbott, constituted the full value of all the land involved in this suit; and alleged that, by reason of the facts pleaded, "the plaintiff is barred and estopped from claiming a lien upon said land against this defendant, the owner of the fee title thereof."

There was a prayer that plaintiff's mortgage be canceled and discharged of record and for general equitable relief.

All affirmative matter in the answer and cross-petition of defendant Arthur J. Abbott was traversed by plaintiff's reply, and upon the trial the court found generally in favor of plaintiff, and against defendant Arthur J. Abbott, fixed and established the mortgage of plaintiff as a first lien upon the real estate, and the mortgage of Christopher J. Abbott as a second lien, and ordered a sale of the premises in the usual way.

Defendants Cranmore and Abbott made no appearance

and decree was entered against them by default. Arthur J. Abbott has appealed.

The issue is concisely stated by appellant as follows:

"Appellant contends that the court erred in holding that plaintiff, appellee, was not estopped to assert a first lien on the property in question."

Although it may not be material, a fuller understanding of the situation of the parties may be had by reciting a few of the uncontroverted facts. In 1917, Robert Cranmore and James Cranmore, being the owners of the land covered by plaintiff's mortgage, made application to plaintiff company through J. W. Mann, a banker at Hyannis, Nebraska, for a loan upon the real estate. These negotiations progressed so far that a mortgage was executed by the Cranmores in the sum of $7,800 in favor of M. D. Cameron, vice-president of plaintiff company. This mortgage was recorded in Garden county, November 15, 1917. For reasons not disclosed by the record, the notes which the mortgage was intended to secure were not delivered by the Cranmores to the mortgagee; no money was passed and, apparently by mutual agreement, the negotiations were closed by Mr. Cameron executing a release of the mortgage, which was duly filed for record January 30, 1918.

In March, 1918, the Cranmores made a new application to plaintiff company for a loan of $7,000 through a banker at Alliance, Nebraska. In due season this loan was made and forms the basis for this foreclosure proceeding. When Mr. Mann, the banker at Hyannis, wrote the letter heretofore set out, at the request of Mr. Abbott, he had no knowledge of the loan that had been made through the Alliance banker. He had in mind the negotiations which had been conducted through him in 1917. When Mr. Wentworth, plaintiff's loan supervisor, replied to the letter written by Mr. Mann, he had no knowledge of the loan made through the Alliance banker but had in mind the negotiations conducted through Mr. Mann. The serial number 25502, at the upper left corner of his letter, is the serial number relating to the mortgage originally drawn in

the name of the vice-president of the company, and later released.   When the loan superintendent promised that a release of the loan would be made he had in mind the mortgage which had theretofore been recorded in the name of the vice-president of his company which had, in fact, been released.   The testimony of the loan superintendent makes it clear that he did not know that the release had been recorded, and that another release was promised merely as an accommodation to the banker, or to the parties interested. It is clear that plaintiff and its agent acted throughout in good faith.   There was no reasonable ground to anticipate that defendant would change his position by surrendering his securities, or otherwise, to his detriment, on the faith of any statement contained in the letter written by plaintiff's agent.

"It is an essential element of an equitable estoppel that the acts, representations, or silence relied on to create the estoppel must have been wilfully intended to lead the party setting up the estoppel to act upon them, or there must have been reasonable grounds to anticipate that he would change his position or in some way act on the faith of the conduct to his detriment."   21 C. J. 1120, sec. 124.

"To constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice." *Walker v. Ehresman*, 79 Neb. 775.

The judgment of the district court is

AFFIRMED.