FRANK B. KIMBALL ET AL., APPELLEES, V. J. H. COOPER ET AL., APPELLEES: LINCOLN THEATRE CORPORATION, APPELLANT.

279 N. W. 194

FILED APRIL 15, 1938. No. 29968.

*Beghtol, Foe & Rankin,* for appellant.

*Chambers & Holland, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

This action was begun in the district court for Lancaster county by Frank B. Kimball and Jennie R. Kimball, plaintiffs, against J. H. Cooper, Lincoln Theatre Corporation, a corporation, Paramount-Publix Corporation, a corporation, and A. M. Avery, defendants, to recover damages al-

leged to have arisen on account of a conversion by the defendants of certain theater equipment and on account of injuries to a theater building. Damages in the amount of $20,000 are alleged by the plaintiff. The defendant Lincoln Theatre Corporation filed an answer and counterclaim. By this counterclaim recovery of damages from the plaintiffs in the sum of $16,835 is sought. These damages are alleged to have arisen on account of an alleged conversion by the plaintiffs of certain theater equipment. All other defendants by their joint answer denied generally the allegations of the plaintiffs' petition. At the close of the introduction of the plaintiffs' affirmative evidence, the trial court dismissed the plaintiffs' petition as against defendants J. H. Cooper, Paramount-Publix Corporation and A. M. Avery. The verdict of the jury was in favor of the plaintiffs upon their petition and fixed the amount of plaintiffs' recovery at $2,050. The jury found against the Lincoln Theatre Corporation upon its counterclaim. From a judgment in accord with the verdict of the jury the defendant Lincoln Theatre Corporation appeals. The plaintiffs cross-appeal.

The pleadings and evidence disclose that at all times material to this case plaintiffs owned the real estate in which a theater known as "The Rialto" was operated on O street in Lincoln, Nebraska. On January 31, 1920, the plaintiffs, who then were and prior thereto had been operating said theater, leased the same to Princess Amusement Company for the period of time from February 1, 1920, to February 1, 1935. On June 27, 1921, a new lease for such premises was entered into. By this second lease the prior lease of January 31, 1920, was abrogated and the premises leased to Princess Amusement Company from July 1, 1921, to February 1, 1935. The Princess Amusement Company operated the theater under this second lease until January 17, 1925, when such lease, with the written consent of the plaintiffs, was assigned to the defendant Lincoln Theatre Corporation. This last-named defendant operated the theater under this second lease until some time about

January, 1932, when it closed the theater and notified the plaintiffs that it would not pay rent due under the lease on March 1, 1932, or thereafter. On March 4, 1932, the plaintiffs herein filed suit against the defendant Lincoln Theatre Corporation to recover the sum of $800 for rent due March 1, 1932, and in such action by appropriate proceedings a portion of the equipment in said theater was attached. On March 6, 1932, the defendant Lincoln Theatre Corporation voluntarily delivered at least a portion of the keys to the theater to the officer who levied the attachment. About May 26, 1932, such action was tried and a judgment dismissing the action and dissolving the attachment without prejudice was rendered on account of such action having been brought prematurely because a written demand for payment of rent provided for by the second lease had not been given. All keys were then redelivered to appellants. No appeal was taken from this judgment. On June 13, 1932, plaintiffs made written demand upon defendants for the rentals due March 1 to June 1, both inclusive, and on June 15, 1932, such rent not having been paid, served written notice upon defendants of the election of the plaintiffs to terminate the second lease. About June 23, 1932, the keys to the theater were voluntarily delivered by defendants to the plaintiffs. Plaintiffs took possession of the premises. Upon being asked as to what had become of certain of the equipment, agents of the defendants said it had been loaned and distributed to various other theaters in Lincoln. The defendants thereupon sent a servant with the plaintiffs to obtain such equipment, and a few truck loads of the equipment were gathered from various theaters and delivered to the plaintiffs. No request to remove any equipment was made by defendants. On June 24, 1932, the plaintiffs filed suit against the defendants herein to recover rent accruing prior to June 15, 1932. In this action the plaintiffs alleged termination of the lease and that they were in possession of the theater. The action was based upon the second lease. The defendants by answer in that action then claimed to have been evicted from said theater wrongfully

by the attachment of March 4, 1932. The defendants' claim in that action was upheld by the trial court, but upon appeal to this court the judgment of the trial court was reversed and the cause remanded for a new trial. *Kimball v. Lincoln Theatre Corporation,* 125 Neb. 677, 251 N. W. 290. Upon a new trial plaintiffs recovered judgment for unpaid rent and upon a second appeal to this court such judgment was affirmed. *Kimball v. Lincoln Theatre Corporation,* 129 Neb. 446, 261 N. W. 842. This judgment was paid to the clerk of the district court of Lancaster county on September 26, 1935, by defendant Lincoln Theatre Corporation. On June 29, 1932, a few days after the commencement of the second of the above-mentioned actions to recover rent, the defendant Lincoln Theatre Corporation, as plaintiff, began an action against the plaintiffs in this action as defendants to enjoin the defendants therein, plaintiffs herein, from using or disposing of any of said theater equipment until the second action for rent was determined. This action for an injunction was never tried and was dismissed for want of prosecution on January 3, 1934. The first petition in this action was filed August 18, 1932. After payment on September 26, 1935, of the judgment for rent, the defendant Lincoln Theatre Corporation made oral demand upon the plaintiffs for possession of the theater equipment. The plaintiffs said they did not hold any equipment belonging to defendants. The counterclaim involved was thereupon filed in this action.

To determine the issues presented it becomes necessary to construe the written contract under which the Lincoln Theatre Corporation, hereinafter called appellant, held the real estate and equipment involved herein. The circumstances surrounding the plaintiffs and Princess Amusement Company at the time of the execution of this contract and the provisions of the written contract itself are not in dispute. None of the acts of the parties to the contract or of the appellant in connection therewith or with the subject-matter thereof that aid in making an interpretation of such contract is in dispute. When the provisions of a

contract, together with the circumstances surrounding its execution, the acts of the parties thereto in connection therewith and facts and circumstances that aid in ascertaining the intent of the parties, are not in dispute, the proper construction of the contract is a question of law. 35 C. J. 1141.

Omitting the parts thereof that either do not aid in a construction of the provisions that bear upon the issues involved or do not tend toward a different construction than that made by us, the contract is as follows:

"By this indenture witnesseth:

"Whereas, the lease heretofore existing between the parties hereto did not express the contract thereof and did not properly specify the property belonging to the Princess Amusement Company, and

"Whereas, it is desired that the errors be corrected and the dispute as to the property rights and terms be settled and determined,

"Now therefore, in consideration of their mutual promises, of the settlement of such dispute, of the fully setting out of their contract, and of the payments as herein specified, this indenture is made this 27th day of June, 1921, by and between F. B. Kimball and Jennie R. Kimball of Lincoln, Nebraska, parties of the first part, and Princess Amusement Company, * * * party of the second part, and thereby be it

"Witnessed: That said parties of the first part, hereinafter designated as the lessors, joint owners in fee of the property hereinafter described, in consideration of the covenants of the party of the second part, herein set forth, do by these presents lease and demise to said party of the second part, hereinafter designated as the lessee, the following described property, situated in the city of Lincoln, Lancaster county, state of Nebraska, to wit:

"Lot 14, Block 63, S. W. Little's Subdivision of Lot 30, of the original plat of Lincoln, Nebraska, otherwise known as 1500 O street, together with all and singular the appurtenances thereunto belonging.

"To have and to hold the same to said lessee, without any liability or obligation on the part of the lessors, of making any alterations or repairs of any kind on or about said premises, except as hereinafter specified, for the term of thirteen years and seven months from the 1st day of July, 1921, to the 1st day of February, 1935. Said lessee in consideration of the leasing of the premises as above set forth, covenants and agrees with the lessors to pay to them, * * * as rent for said premises the sum of $130,400, payable as follows, to wit: $800 on the 1st day of July, 1921, and $800 on the 1st of each and every month thereafter, to and including the 1st day of January, 1935.

"For the considerations as above set out, and the leasing and demise of said premises, it is further agreed by and between said parties as follows: * * *

"2. That said lease heretofore existing and being under date of January 31st, 1920, shall, from the first day of July, 1921, be abrogated and this lease and agreement be substituted therefor. * * *

"4. That all the equipment (except the fire curtain, together with the heating, lighting, and ventilating systems, existing in said building upon the date thereof, with fans and other equipment used in connection therewith which it is agreed belong to lessors) including, among other things, the seats, carpets, fans, furniture, lamps, signs, machinery, fixtures, pipe organ, musical instruments, pictures, decorations, fixtures and theater and stage equipment of every kind, used in the operation or use of the Rialto Theater is the property of party of the second part and the same, or that with which it is replaced, shall be, and the same is hereby given as security for the fully performing by party of the second part of the covenants by it hereby to be performed, but may be removed at any time, provided same is replaced by that which is as good, or better, and the building restored, and upon the expiration of this lease, may, if the covenants thereof have been fully performed, be removed upon condition that the building be restored.

"5. That party of the second part may install in said

building at its own expense a ventilating system and may, at the expiration of this lease, remove the same upon condition that the building be restored and that said system shall remain the property of party of the second part. * * *

"8. That the lessee will carry insurance against loss by fire and tornado, covering all furnishing and equipment of every kind in said theater, in a sum sufficient to replace said furnishings and equipment in as good condition as they existed prior to the fire or tornado, and in any event, no less than $20,000 fire insurance, and $20,000 tornado insurance. * * *

"10. That the lessee will * * * be responsible for and at its own expense keep in repair all plumbing, water pipes, gas pipes, steam pipes, radiators, electric wiring, and sewerage or other fixtures, including plate glass, and window glass, and that said lessee will not suffer or allow any damage to any of the equipment, building or other improvements belonging to said premises. * * *

"12. That, subject to the provisions of paragraph numbered 1 hereof, upon a failure to make payments of rent as herein agreed, or upon the violation or nonfulfilment of any of the covenants of this lease, said lessors may, at their election, either distrain for said rent due and damages sustained, or declare this lease at an end, and recover possession, as if said property together with the furnishings and equipment were held by forcible detainer, the said lessee hereby waiving any notice of such election, or any demand for the possession of said equipment and premises. * * *

"These presents are executed in duplicate as aforesaid."

The evidence shows without dispute that at the time of the execution of the second lease on June 27, 1921, the plaintiffs were the owners of all the equipment in the theater. The value of such equipment was upwards of fifteen to twenty thousand dollars. The theater business was of such a nature that it was necessary to constantly add new innovations and methods in such business, and in doing so to exchange old equipment for more modern equip-

ment. While the old lease was erroneously excluded from evidence, its exclusion was without prejudice as enough evidence exists to lead to the same interpretation of the second lease as would be made had the first lease been admitted into evidence. It is important to note that no part of the purchase price of this equipment was ever agreed upon or ever paid to the plaintiffs except as it may have been included within the monthly rental payments. The total rental of $130,400 is so commingled with and so includes the purchase price of the equipment as to cause the purchase price and rentals to become impossible of separation. Subdivision 6, omitted from the portions of the lease above set out, provided a complete restriction upon alienation of the title to said equipment by the lessee whether such alienation be of equipment received from plaintiffs or later placed in the theater by the lessee. Subdivisions 4 and 12 provided that at the expiration of the lease the equipment may be removed by the lessee if the lessee has fully performed, and provides that if default be made by lessee the plaintiffs may recover the equipment. The contract is silent as to what the plaintiffs shall do with the equipment in case of such a recovery. The uniform conditional sales act is not in force in this state. Could the plaintiffs recover any more of the purchase price of the property than that included within rents that accrued prior to the breach? The law seems to say they could not. 36 C. J. 335, and cases cited. Had the breach and forfeiture occurred one month after the commencement of the lease, and if the plaintiffs are prevented from recovery of rent accruing after the date of forfeiture, could the appellant successfully contend that it owned the equipment free of encumbrance after payment of rent accruing prior to forfeiture? After the forfeiture the parties treated the equipment as belonging to the plaintiffs, at least until the action for an injunction was begun. We construe the contract between the parties as a conditional sales contract so far as it relates to the equipment involved. See 8 C. J. S. 230, sec. 3 C; 24 R. C. L. 450, sec. 748.

It is a contention of the appellant that the plaintiffs had merely a lien on the equipment and that when action was brought and attachment made to collect rent such lien was lost. *Potter v. Greenleaf*, 21 R. I. 483, 44 Atl. 718; *Shelton v. Jarrell*, 54 S. W. (2d) (Tex. Civ. App.) 1082. This contention is predicated upon the supposition of title to the equipment being in the appellant during the term of the lease, and would render nugatory the provision in the contract allowing plaintiffs to recover the equipment upon forfeiture and reentry. It may be claimed by appellant that an election to sue for a recovery of a portion of the sale price by a conditional seller of personalty accompanied by attachment of the goods sold, in the absence of statutory regulation or provisions in the contract to the contrary, constitutes such an election of remedies as to vest absolute title in the vendee. See 55 C. J. 1221, 1223, and cases cited in footnotes; 24 R. C. L. 482, sec. 776; *Mathews Piano Co. v. Markle,* 86 Neb. 123, 124 N. W. 1129. The rule stated is subject to exceptions. Here a predominant part of the consideration was rent for the real estate. The purchase price of the equipment is inextricably woven into the amount of the rentals. Plaintiffs are prevented from recovery of rentals accruing subsequent to forfeiture and reentry and hence prevented from recovery of the unpaid balance of the purchase price of the equipment. What would be the effect of an action by plaintiffs for the unpaid part of the reasonable value of the equipment, or whether such an action could be maintained, we need not decide. Plaintiffs have not brought such an action. The rule to the effect that recovery of the purchase price by the seller under a conditional sales contract vests title to the goods in the buyer does not apply to recovery of rent accruing before forfeiture on breach by a tenant and reentry into possession by the landlord of both real estate and goods under a lease to real estate for a term of years that contains a conditional sales contract of goods, when the rent and purchase price are due and payable in instalments and are so mingled into one sum as to be incapable of separation. 55 C. J. 1274.

The appellant attempts to distinguish between the rights of the plaintiffs in the equipment delivered to the original lessee by the plaintiffs and that subsequently placed in the theater by the original lessee or by the appellant. The provisions of the lease under which appellant held and the interpretations of those provisions by the parties as disclosed by their acts made no such a distinction. As between a conditional seller and buyer of personal property a provision in a contract to the effect that the buyer may dispose of such property and replace it with other property may have the effect of causing the parties to occupy the same relation to such after-acquired property as they occupied to the original goods. See 55 C. J. 1213, and cases cited. The evidence in this case when considered in connection with the contract involved is such as to show title to any equipment placed in the theater by appellant to have vested in plaintiffs subject to the right of appellant to become the owner thereof at the expiration of the term of the lease upon full compliance with the terms thereof. Otherwise, the provisions of the contract to the effect that plaintiffs may recover all equipment upon termination of the lease by forfeiture is rendered nugatory as to equipment placed in the theater by appellant or its assignee to replace that removed.

We deem it unnecessary under the view herein taken of the issues involved to determine many assignments of error made by appellant. Questions of whether certain parts of the equipment involved were fixtures and certain parts not fixtures become immaterial. We deem it unnecessary to make any application of the rule relating to the right of a tenant after forfeiture and reentry by the landlord to remove fixtures. See *Stevens v. Burnham*, 62 Neb. 672, 87 N. W. 546. The trial court submitted the counterclaim of the appellant upon the issue of whether or not the appellant had abandoned the equipment involved, and in doing so gave instruction No. 12. The appellant assigns the giving of this instruction as error. It has been held by this court that error in the giving of an instruction

is not prejudicial when the verdict rendered is the only verdict that the pleadings and evidence would support. *Leichner v. First Trust Co.*, 133 Neb. 170, 274 N. W. 475. An action in trover for the conversion of personal property cannot be maintained unless at least either title or right to possession of such property at the time of the alleged conversion is in the plaintiff. 26 R. C. L. 1131, sec. 41.

We have examined all assignments of error made by appellant and find no error prejudicial to its rights.

The plaintiffs have perfected a cross-appeal. By their cross-appeal plaintiffs complain of the action of the trial court in refusing to submit to the jury the question of whether or not appellant had converted a pipe organ, various sets of furniture and scenery which had been delivered to the original lessee and never returned to the plaintiffs. By instructions Nos. 7 and 8 the trial court limited the plaintiffs to recovery for damages to the real estate caused by destruction of brick and plaster in removing the pipe organ, and damages to the heating plant, radiators and electric wiring. Such damages the jury fixed at $2,050. True the plaintiff's petition sets forth a copy of the second lease and a copy of the assignment to appellant. Nowhere does such petition mention any damages arising from an inability to rent the premises for the unexpired term of the lease for as large a rental as appellant had paid prior to a breach of the lease. Had appellant complied with the terms of the lease, it would have been the owner and entitled to remove from the theater at the expiration of the lease all items of property that plaintiffs now allege it converted. Furthermore, plaintiffs' petition pleads and the lease provides that appellant could rightfully dispose of and remove from the theater during the term of the lease all articles that plaintiffs now allege it converted. The lease bound the appellant to replace any equipment removed. Is not a failure to do so a breach of covenant and not a conversion? A study of the plaintiffs' amended petition will disclose that it pleads a cause of action only for waste upon the real estate, as it pleads the appellant's

right of removal and disposition of equipment during the term, and does not contain sufficient allegations to plead a cause of action for breach of covenant. If the plaintiffs were yet to bring action for breach of covenant, would not the measure of damages be the decrease in rental caused by the breach minus rental received during the unexpired term and the value of equipment that plaintiffs received? We do not decide. It is difficult to see how the judgment in this action as against either the plaintiffs or the appellant could be a bar to such an action. Would the denial to appellant of the right to recover in trover in this action be inconsistent with allowing it credit for equipment received by plaintiffs in an action for breach of covenant? We do not decide. We do hold that a seller in a conditional sales contract that reserves title in the seller until the purchase price is paid and that expressly authorizes a disposition of the property by the buyer, provided it is replaced by property that is as good or better, cannot recover against the buyer in an action of trover for the conversion of property of which the buyer has disposed, even though no replacement is made. 55 C. J. 1230.

The plaintiffs do not seriously contend and could not successfully maintain a contention to the effect that any judgment should be rendered against defendants other than the Lincoln Theatre Corporation. Aside from a determination of the amount of damages for waste, the verdict rendered by the jury is the only verdict that could be supported under the pleadings and the evidence. The evidence would support other amounts than $2,050 for waste, but of this amount no complaint is made.

For reasons above stated, the judgment of the trial court is

AFFIRMED.