MYRTLE FITZSIMONS, APPELLEE, V. VIRGINIA R. FREY, APPELLANT, WYONA FREY, APPELLEE.

45 N. W. 2d 603

Filed January 12, 1951. No. 32796.

*Ginsburg & Ginsburg,* for appellant.

*William L. Walker, Earl Ludlam,* and *Leonard Dunker,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

The action here as it comes to this court is by Myrtle Fitzsimons, plaintiff, against Virginia R. Frey and Wyona Frey, defendants. It is in two causes of action. By the

first cause of action plaintiff charges that the defendants on April 4, 1948, converted personal property of the plaintiff of the value of $18,384.80. On account of this alleged conversion she seeks to recover this amount with interest.

The second cause of action is for damages to real property.

A verdict was directed in favor of the defendant Wyona Frey on both causes of action. A verdict was returned in favor of plaintiff and against the defendant Virginia R. Frey on the first cause of action for $3,500, and in favor of Virginia R. Frey and against the plaintiff on the second cause of action. Judgment was entered on the verdict.

The defendant Virginia R. Frey has appealed from the judgment on the first cause of action. The plaintiff has cross-appealed from the direction of the verdict in favor of the defendant Wyona Frey on the two causes of action and from the judgment against her on the second cause of action.

For convenience hereinafter, where separate identification is required, the plaintiff will be referred to as Mrs. Fitzsimons, the defendant Virginia R. Frey as Mrs. Frey, and the other defendant as Wyona Frey.

The incidents, to the extent necessary to be stated here, are that prior to April 4, 1948, Mrs. Frey and Mrs. Fitzsimons were negotiating for the exchange of real estate and the contents of the buildings which were situated on the properties. The buildings and the contents of the properties which Mrs. Fitzsimons was proposing to convey to Mrs. Frey are of no concern here insofar as description is concerned. The property of Mrs. Frey is located at the southeast corner of Twenty-seventh and Van Dorn Streets in the city of Lincoln, Nebraska. It consists of a large lot, a large residence, and its contents, or most of its contents.

The property at the time was occupied by Mrs. Frey as a residence except two apartments therein, one of

which was occupied by Wyona Frey and the other by a tenant. The furniture and furnishings in Wyona's apartment belonged to her.

On April 4, 1948, Mrs. Fitzsimons and Mrs. Frey prepared and signed the following memorandum of agreement:

"Between Vergina Frye and Myrtle Fitzsimons agreement on furniture.

Party 2. Fitzsimons agrees To Leave ~~refrigerator~~ and Stove on 2nd floor Electric range In Kitchen also deep freeze White Handles.

Mrs. Frey takes 2 bedroom sets the furniture Known as In Wyona's apt also her refrigerator. Also her desk and Duano. rose. this is our personal agreement between we two

Virginia Frey
Myrtle Fitzsimons

April 4 - 1948"

After this instrument was executed, on April 5 or 6, 1948, these two parties had a conference with their attorneys and arranged to have a contract drawn for the exchange of their properties. This contract was executed and delivered on April 20, 1948.

The contract was an executory one for the exchange of real estate and in it no mention was made of furniture, furnishings, or any other kind of personal property contained upon any of the real estate described. It provided for abstracts showing merchantable title, time for clearance of title if it was not clear, the obligations of the parties with reference to the exchange, and for closure and delivery of instruments of transfer on or before May 1, 1948. The transfer did not take place however until May 5, 1948.

On or about April 22, 1948, pursuant to mutual understanding Mrs. Frey proceeded to and did remove from the house she had contracted to convey to Mrs. Fitzsimons and on the same day Mrs. Fitzsimons moved into this house.

The claim of Mrs. Fitzsimons' first cause of action is that by the instrument quoted herein and on the date thereon appearing she became the owner of the personal property described in the petition and that this property was removed by Mrs. Frey on or about April 22, 1948, thus she converted the same. Her cause of action is in conversion.

The defendants duly pleaded among other defenses that there was no conversion and there could have been none for the reason that at the time of the alleged taking and removal Mrs. Fitzsimons did not have title to or ownership or the right to possession of the property, the substantial theory being that title to the property described, if in fact it existed, did not and could not have passed until May 5, 1948, when the exchange of real estate took place. The basis of this contention is that the conveyance of the contents of the house was a part and incident of the transaction relating to the real estate and that everything with regard to both remained executory until May 5, 1948.

The issue of conversion was submitted to the jury and as indicated the verdict was favorable to the plaintiff and against Mrs. Frey.

At the close of plaintiff's evidence and again at the conclusion of all of the evidence the defendants moved for a directed verdict on the first cause of action on the ground that the evidence was insufficient to sustain a finding that there had been a conversion of this property. These motions were overruled. The rulings on these motions were assigned as error in a motion for new trial and a motion for judgment notwithstanding the verdict. The assignment is preserved in the assignments of error in this court.

The first question for consideration here therefore is that of whether or not a verdict should have been directed in favor of the defendants on the first cause of action.

It is well settled in order to maintain an action for

conversion a party must have actual possession of the property or the right to have immediate possession. This court said in Kimball v. Cooper, 134 Neb. 536, 279 N. W. 194: "An action in trover for the conversion of personal property cannot be maintained unless at least either title, absolute or special, or right to immediate possession at the time of the alleged conversion is in the plaintiff."

In Burchmore v. Byllesby & Co., 140 Neb. 603, 1 N. W. 2d 327, it was said: " 'To maintain an action for conversion of chattels, a party must have actual possession of the property, or the right to immediate possession.' " Obviously this court in employing this language, which was first employed in Coulter v. Cummings, 93 Neb. 646, 142 N. W. 109, meant to say that to maintain an action for conversion of chattels a party must have had actual possession of the property, or the right of possession at the time of the conversion.

In 53 Am. Jur., Trover and Conversion, § 68, p. 863, it is said: "The general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to the immediate possession of the property. An interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time."

In 65 C. J., Trover and Conversion, § 92, p. 57, it is said: "The correct rules appear to be that: It is necessary and sufficient that plaintiff shall have had either possession or the right to possession at the time of the alleged conversion; he must have had at least a right to immediate possession; and as a right of possession ordinarily depends on some title or right of property, general or special, he must have had, generally speaking, either actual possession or ownership and right of possession."

It is the contention of plaintiff that by the agreement

quoted herein she became entitled to the immediate possession of this property, the theory apparently being that this represented a transaction separate and apart from and independent of the transfer of the real estate. In her examination in chief she gave some testimony which might be said to equivocally support this theory but in her cross-examination her position in that respect became positive and a complete negation of the theory, and a complete confirmation of the theory of the defendants that the matter of transfer of the personal property was a part of and dependent upon the transfer of the real estate. Her testimony as to this matter is the following: "Q. Mrs. Fitzsimons, with reference to this Exhibit 1 and 1-A, you are familiar with the instruments I am referring to, are you not? A. That's right. Q. Were you trading a stove, electric range, and a deep-freeze for Mrs. Frey's furniture? A. No. Q. Is that the deal? A. No. Q. You mean by that, no, is that right? A. That's right. Q. What were you giving to Mrs. Frey for her promise to give you the furniture as set forth in this Exhibit 1? A. We were trading property and furniture. Q. In other words, then, if I understand it correctly, you wouldn't have made Exhibit 1 unless you would have made Exhibit 2, is that correct? A. Yes. Q. In other words, it was understood Exhibit 1 would have no effect unless and until you made the trade on the real estate, is that right? A. That's right. Q. And if anything were to happen in the meantime that the trade on the real estate wouldn't go through, then of course there wouldn't be anything between you, as far as Exhibit 1 is concerned, is that right? A. That's right. Q. If, for example, Mrs. Frey couldn't have delivered, or didn't have a good abstract of title to her property, and you would have refused to go through with the deal, you would not have wanted to go through with Exhibit 1, is that right? A. That's right. Q. Now I'll ask you, Mrs. Fitzsimons, I don't want to have any mistake about this, whether it

isn't a fact that you had previously stated in giving your deposition, that the furniture deal had nothing to do with the real estate deal? A. She preferred to keep them separate. Q. What I mean is, did you tell Mr. Kier, for example, that the furniture deal had nothing to do with the real estate deal? Is that right? A. In a manner they are connected, yes. Q. But my question was whether you had told Mr. Kier at one time, the two didn't have any connection? A. That's right. Q. And you at one time also told Mr. Kier that as far as the furniture was concerned, it really was a trade of the electric range and deep-freeze for Mrs. Frey's furniture? You say you didn't tell him that? A. No trade like that. Q. And you say you didn't make that statement to Mr. Kier? A. Each depended on the other. Q. That's what I understand now, but I am asking you whether you had formerly told Mr. Kier that the furniture deal didn't have anything to do with the real estate, when Mr. Kier took your deposition? A. I think it has always been said, each depended on the other. Q. Well, let me ask you if you remember this, in Mr. Kier's office at 539 Stuart Building, when your deposition was taken on the 9th day of July, 1948, Mr. Kier asked you this question: 'You say the furniture deal was a separate deal entirely?' And you said, 'That's right.' Do you remember that? A. That's right. Q. And Mr. Kier also asked you this: 'And had nothing to do with the real estate deal whatsoever?' And you said, 'No.' Is that right? A. That's right. Q. But now you want the court and jury to understand that actually the two deals were tied up? A. Each depended on the other. Q. In other words, the furniture deal definitely wouldn't have been given, if the real estate deal wasn't made, isn't that right? A. Yes. Q. And until the real estate deal was completed, you didn't know whether you would even complete your furniture deal, isn't that right? A. We were sure of completion, or we wouldn't have moved. Q. If there had been anything wrong

with the title? A. We would have corrected it. Q. Supposing that wouldn't have been possible? Supposing it developed she didn't own the property, then what would have happened? A. We wouldn't have signed the contract. Q. But it was your understanding the furniture deal depended on the completion of the real estate deal? A. Each depended on the other."

This evidence applied to the legal principles enunciated herein makes clear that the plaintiff had no possession or right of immediate possession of the articles in question, if she ever acquired any such right, on April 4, or April 22, 1948, and that she acquired no such right until May 5, 1948, the date when the transfer of property became effective.

It follows that she may not maintain this action in conversion. The motion for directed verdict should have been sustained and the trial court not having sustained it should have sustained the defendants' motion for judgment notwithstanding the verdict as to plaintiff's first cause of action.

As earlier indicated herein the plaintiff has presented for consideration a cross-appeal. This cross-appeal presents matters dealing with both the first and the second causes of action. In the light of the determination made upon the first cause of action the cross-appeal as to it requires no consideration.

The second cause of action is for damages to the residence at Twenty-seventh and Van Dorn Streets which came to plaintiff in the exchange of properties. The plaintiff substantially contends in this connection that the exterior and interior of the residence were damaged while the defendants were moving therefrom for which damage they are liable.

On this cause of action the court directed a verdict in favor of Wyona Frey. There is no evidence whatever that Wyona Frey had anything to do with the moving or that anything connected with it was under her super-

vision or control. The court therefore properly directed a verdict in her favor.

The issue in this respect as to Mrs. Frey was submitted to a jury and a verdict was returned thereon in her favor. The error assigned in this regard is that the verdict is against the clear weight of evidence and is contrary to the evidence and law.

On behalf of plaintiff there is circumstantial evidence that during moving there was some damage to the exterior of the building and some to the interior occasioned by removal of some of the articles claimed by plaintiff to have been removed in the first cause of action. This was denied by Mrs. Frey and it cannot be said that her evidence is incapable of belief. The question was one for a jury and it cannot be said that the verdict is clearly wrong.

The appropriate rule is that this court will not disturb the findings of a jury unless on an examination of the record it may be said that such findings are not supported by any evidence or are clearly wrong. Keyser v. Allen, 149 Neb. 449, 31 N. W. 2d 309; Willoughby v. Swett, 150 Neb. 258, 34 N. W. 2d 287; Kunkel v. Cohagen, 151 Neb. 774, 39 N. W. 2d 609.

It is concluded therefore that the judgment of the district court as to the first cause of action be and it is reversed and the district court is directed to render judgment notwithstanding the verdict on said cause of action in favor of the defendants.

It is further concluded that the judgment as to the second cause of action be and it is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED WITH DIRECTIONS.