MORRIS JESSEN ET AL., APPELLEES, V. MARY BEARD BLACKARD, TRUSTEE, ET AL., APPELLANTS.

65 N. W. 2d 345

Filed July 16, 1954.   No. 33566.

104

*Torgeson, Halcomb & O'Brien,* for appellants.

*Clarence M. Miller* and *Robert A. Nelson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, Morris and Ilse Jessen, brought this action against defendant Mary Beard Blackard, trustee, whose name is now Mary Beard, and others, who were dismissed out of the case before trial, seeking to recover $50,000 damages for alleged conversion of their wheat crop grown and harvested by defendant upon described school lands of which defendant was the former lessee as trustee, and plaintiffs were the new lessees. Concededly, all of the improvements on the land, including the crop involved, were appraised by the county commissioners for a net of $44,026 on June 24, 1952, and such appraisement was duly filed, but plaintiffs never paid same or prosecuted error therefrom. Plaintiffs' theory of recovery was that defendant was estopped or had waived her right to claim any value of the crop except such as it had on January 1, 1952, to wit, $7,500, and that on or about July 11, 1952, within 30 days of the

filing of the appraisement, defendant, without plaintiffs' knowledge or consent, unlawfully converted the crop, having a reasonable value of $50,000, to the use and benefit of the trust, and upon demand failed and refused to return the same. A copy of the appraisement, the trust agreement entered into by defendant, and the original lease there involved, together with assignments thereof, were attached to and made a part of plaintiffs' petition.

On the other hand, defendant filed an answer and cross-petition. Therein she denied generally but admitted that she timely and properly grew and harvested the wheat crop and conserved the same in accordance with good husbandry and agricultural practices; and alleged that she was not guilty of any conversion because plaintiffs did not and have not, as required by law and as they agreed to do, properly tendered or paid the appraised value thereof, which appraisement became final and not subject to collateral attack as attempted herein by plaintiffs. Defendant offered to account for the crop harvested, provided plaintiffs paid the appraisement, and prayed for dismissal of plaintiffs' petition together with judgment for the appraised value. Plaintiffs, for reply to defendant's answer and for answer to defendant's cross-petition, filed general denials.

At a trial, jury waived, the facts were adduced by written stipulation offered and received in evidence, which provided that the facts should be "considered by the Court the same as though they had been presented by evidence, subject, however, to the right of any party hereto to object to the competency or the materiality thereof." Numerous such objections appear in the stipulation, some of which will be later considered. The judgment of the trial court, which concededly should not be reversed unless clearly wrong, found generally in favor of plaintiffs and against defendant. It found that on or about July 11, 1952, plaintiffs were the owners and entitled to possession of the wheat crop, and that

defendant had wrongfully converted same to her own use as trustee. It found that she had converted 14,583 bushels and 20 pounds of wheat, which at the then Production Marketing Administration loan value of $2.05 per bushel, was worth $30,449.33. Therefrom the judgment deducted $4,390.60, expense of harvesting, plus $7,500, the value of the crop on January 1, 1952, and rendered judgment for plaintiffs and against defendant for $18,558.73, with interest at 6 percent from July 11, 1952, in the amount of $1,694.98, or a total of $20,253.71 and costs.

Defendant's motion for new trial was overruled and she appealed, assigning that the trial court erred: (1) In permitting an attack to be made collaterally upon the appraisement made by the county commissioners and in giving the same no force and effect, by erroneously admitting, considering, and applying incompetent and immaterial evidence of the claimed value of the crop as of January 1, 1952, over appropriate objections thereto made by defendant; (2) in determining that defendant, as a matter of law or fact, was guilty of conversion of her own crop by harvesting it at a proper time prior to payment therefor by plaintiffs; and (3) in failing to render judgment in favor of defendant upon her cross-petition for a stated amount to be determined in a particular manner, as required by the undisputed and stipulated evidence adduced and law applicable thereto. We sustain the assignments except assignment No. 3, which is disposed of in a manner contrary to defendant's contention with regard thereto.

The record discloses as follows: Defendant was the owner by assignment to her as trustee of a 25-year lease upon the land. It expired December 31, 1950, and was thereafter of no force and effect. On July 11, 1950, as trustee, she applied for a renewal, pursuant to sections 72-240 and 72-240.01, R. R. S. 1943, and thereunder a new lease was issued and delivered to her by

the State Board of Educational Lands and Funds, hereinafter called the Board, for 12 years beginning January 1, 1951. However, on April 26, 1951, this court held in State ex rel. Ebke v. Board of Educational Lands & Funds, 154 Neb: 244, 47 N. W. 2d 520, and affirmed in subsequent cases, that sections 72-240 and 72-240.01, R. R. S. 1943, were unconstitutional and that leases issued pursuant thereto were void. Therefore, in conformity with a resolution of the Board dated August 13, 1951, defendant was notified in writing on August 27, 1951, that her 12-year lease was cancelled as void, and would be subsequently offered for sale at public auction in accord with a published notice and as provided by law. The notification told her that she would be given an opportunity to bid at such a sale and if successful, a lease would be issued to her for 12 years. It then said: "Should some person other than yourself be the successful bidder, any improvements which you have upon the lands will be appraised by a majority of the members of the board of county commissioners or by three of the supervisors as the case may be. The new lessee must then pay to you the amount of such appraisal, subject to any lien which the state may have for unpaid rental. Either you or the new lessee may, if dissatisfied with the appraisal, take an appeal to the District Court."

As concluded in State v. Cooley, 156 Neb. 330, 56 N. W. 2d 129, defendant was subsequently a tenant at sufferance and not entitled to notice to terminate except the 3-day notice to vacate required by section 27-1404, R. R. S. 1943. The record does not disclose that such a notice was ever served upon defendant or when if ever she surrendered possession. In that situation, at a proper time and in a good workmanlike manner in accord with good husbandry and agricultural practices, defendant summer-fallowed the land and planted winter wheat thereon in the fall of 1951. That is the crop here involved.

Subsequently, notice was duly published on the 3rd, 10th, and 17th of April 1952, that the lease on the land would be sold at public auction on April 25, 1952, at the courthouse in Garden County, where the land is located. The sale was so held, whereat plaintiffs and another on behalf of defendant, were bidders. However, plaintiffs offered the highest bonus bid, and on April 25, 1952, submitted their written application for a lease to the Board, together with payment of the amount of the bonus bid, a lease fee, and rental for the period from January 1, 1952, to December 31, 1952. Plaintiffs' application provided in part: "I also agree to pay for the improvements upon the land as provided by law * * *." Thereafter, on April 28, 1952, relying upon plaintiffs' application, the Board issued a lease thereon to plaintiffs for a 12-year period beginning January 1, 1952.

Prior to the time of the sale, defendant had published a notice that she intended to harvest the wheat crop regardless of who might secure the lease. However, at the sale her agent delivered to a representative of the Board a written statement, which was publicly read at the sale, rescinding such notice and stating that she "would abide by the ruling of the Board of Educational Lands and Funds with reference to the compensation for improvements upon said land." At the opening of the sale, a representative of the Board conducting the same also read a written statement prepared by the Board officially outlining procedure to be followed in conducting the sale. It required the representative to first read a notice of the sale and then read the following, insofar as important here: "If some person other than the old lessee is the successful bidder he must also pay for the improvements upon the land. These improvements consist of all buildings, fencing, wells, windmills, pumps, tanks, irrigation improvements, dams, drainage ditches, plowing for future crops and for alfalfa or other crops growing thereon. If the parties are unable to agree upon the price to be paid for the im-

provements within ten days the same will be appraised by the county board and their appraisement filed with the county treasurer. The new lessee must within thirty days from the date of the filing pay the amount of the appraisement to the county treasurer, for the benefit of the old lessee, subject to any lien due the state for unpaid rental. No lease will be issued until payment for the improvements has been made to the county treasurer." In that connection, plaintiffs offered, over appropriate objections of defendant, evidence that a representative of the Board there also publicly stated that the improvements would be appraised as of January 1, 1952. In like manner plaintiffs also offered evidence that the value of the wheat crop on that date was $7,500, and argued that by reason of her conduct aforesaid, defendant was estopped or had waived her right to claim any other value thereof subsequent to January 1, 1952. With that contention we cannot agree.

In that connection, section 72-240.06, R. R. S. 1943, then applicable, provided in part: "If the lease is made to a person other than the lessee, the value of all the improvements on the land shall be appraised by a majority of the members of the board of county commissioners * * *. Improvements to be included in such appraisement shall be all buildings, fencing, wells, windmills, pumps, tanks, irrigation improvements, dams, drainage ditches, plowing for future crops and for alfalfa or other crops growing thereon. The appraisement herein provided for shall be made within thirty days after the entry of the new lease and after being signed shall be filed within five days with the county treasurer of the county in which the land is situated. The new lessee shall pay all costs of the appraisement. Either the lessee or the new lessee may, if he is dissatisfied with the appraisement, within thirty days after the filing thereof, appeal therefrom to the district court of the county in which the land is situated. The new lessee, if he be other than the former lessee, shall within thirty days

after the filing of the appraisement pay to the county treasurer the amount of the appraisement. * * * The new lease shall be revocable until the amount of the appraisement has been so paid."

It will be noted that the sale was not held until April 25, 1952, and there was no entry of the new lease until April 28, 1952, almost 4 months after January 1, 1952. We find nothing in the procedure authorized by the Board officially saying or inferring that the improvements would be appraised as of January 1, 1952, and we find no evidence in the record that defendant ever so represented or agreed thereto, or that plaintiffs ever changed their position in reliance thereon, and we find no provision in the statute requiring such an appraisal to be made as of January 1, 1952. In any event, plaintiffs had ample opportunity to have raised that question at the appraisement or subsequently by prosecuting error therefrom, which they failed to do.

In that regard, also, defendant had a right to assume that any action or ruling of the Board with reference to issuance of the lease and compensation for improvements would conform with the law and that plaintiffs had knowledge thereof and were bound thereby. In State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196, we held that: "Anyone dealing with the school lands does so with knowledge of and subject to the trust obligations of the state and the legislative grant of power to the board as to the terms and conditions of the lease.

"The law enters into and becomes a part of the contract."

In that regard, section 72-234, R. R. S. 1943, provides in part that: "Leases shall be for periods of twelve years *less the period intervening between the date of the execution of the lease* and December 31 of the previous year." (Italics supplied.) Also, section 72-240.06, R. R. S. 1943, requires that the appraisement of improvements "shall be made within thirty days after the entry

of the new lease" which entry in this case was on April 28, 1952, and requires that plaintiffs herein would "within thirty days after filing of the appraisement pay to the county treasurer the amount of the appraisement" unless error was prosecuted therefrom, and provides that: "The new lease shall be revocable until the amount of the appraisement has been so paid."

The general rule is that in order to create an estoppel it is essential that the party against whom the estoppel is claimed acted with knowledge of the facts and asserted particular rights inconsistent with those subsequently claimed, and that the party claiming estoppel, being without knowledge or means of knowledge of the facts, was influenced by and relied upon the conduct of the person sought to be estopped, and changed his position in reliance thereon or acted upon it to his injury or prejudice. Sedlak v. Duda, 144 Neb. 567, 13 N. W. 2d 892, 154 A. L. R. 490. See, also, Walker v. Ehresman, 79 Neb. 775, 113 N. W. 218; Peters Trust Co. v. Cranmore, 114 Neb. 491, 208 N. W. 635; State ex rel. Truax v. Burrows, 136 Neb. 691, 287 N. W. 178. Also, as held in Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N. W. 2d 593: "If any of these elements do not exist, an estoppel cannot be applied." Further, no estoppel can arise where all of the parties interested have equal knowledge of the facts or where the party claiming estoppel has the same means of ascertaining or is chargeable with notice of the facts, or is equally negligent or at fault. Scottsbluff Nat. Bank v. Blue J Feeds, Inc., 156 Neb. 65, 54 N. W. 2d 392.

Also, in Lipe v. World Insurance Co., 142 Neb. 22, 5 N. W. 2d 95, this court held: " ' "Waiver" has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall

be surrendered and such person forever deprived of its benefit; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing an act inconsistent with claiming it.' 67 C. J. 289."

The record before us does not support plaintiffs' contentions with reference to either estoppel or waiver. Thus, they would have no application.

On June 13, 1952, there had not yet been any appraisement of the improvements, and plaintiffs had not yet settled or paid for any part of them, so on that date defendant so notified the Board in writing, and requested that they have the county commissioners make an appraisal thereof. In response thereto, the county commissioners made an appraisement on June 24, 1952, while defendant was still in possession, and filed same with the county treasurer as required by law. Such appraisement valued the wheat crop at $53,750, upon the basis of $2.15 per bushel, for an estimated 25,000 bushels, and deducted $3,750 therefrom for cost of harvesting, leaving a net value of $50,000 for the crop. It then added $1,526, the value of all other improvements and deducted $7,500 for insurance, thus leaving a net value of $44,026 for all improvements.

Neither plaintiffs nor defendant prosecuted error therefrom to the district court as required by Jungman v. Coolidge, 157 Neb. 122, 58 N. W. 2d 828, following From v. Sutton, 156 Neb. 411, 56 N. W. 2d 441. However, plaintiffs did undertake to appeal from the appraisement, but their appeal was dismissed and such dismissal became final before this action was tried. As hereinafter observed, such appraisement was final and conclusive and not subject to collateral attack as here attempted, so that any evidence with relation to the value or the appraisement of the improvements as of January 1, 1952, would be wholly incompetent and immaterial.

In the meantime, on or about July 11, 1952, plaintiffs had not yet tendered or paid the appraisement or any part thereof, so, without their permission but in due

and proper time and in a good and workmanlike manner and according to good agricultural practices, defendant harvested and sold the wheat crop, properly attempting thereby to conserve the same and prevent a loss thereof by natural elements and plaintiffs' past and prospective failure to pay the appraisement. Concededly, notwithstanding losses by elements beyond her control, defendant obtained therefrom 14,853 bushels and 20 pounds of No. 2 wheat. The market price was then $1.89 per bushel, so it sold for $28,072.80, but after deducting $4,390.60, cost of harvesting, defendant received a net of $23,682.20 for the crop.

On or about July 17, 1952, plaintiffs, without any proper tender or payment of the appraisement, demanded of defendant in writing that she deliver free of charge to them not later than August 1, 1952, evidenced by way bill tickets at their elevator in Oshkosh, 25,000 bushels of No. 1 wheat, and give them a bill of sale to all of the improvements listed in the appraisement of the county commissioners, after which they would pay the total sum of $44,026, the net amount of the appraisement, plus the further sum of $3,750 harvesting expenses deducted from the appraised valuation of the wheat crop by the county commissioners but which defendant had paid in harvesting the crop. With such demand defendant failed and refused to conform.

Also, on August 4, 1952, in partial conformity with and recognition of the validity and binding effect of the appraisement, plaintiffs paid to the county treasurer $1,526, the appraised value of all other improvements on the land. Whether or not defendant voluntarily accepted that payment is not shown, but that would be immaterial in any event since, as hereinafter observed, the appraisement was final and her acceptance of such payment would be within the exceptions pointed out in Hoesly v. Department of Roads & Irrigation, 142 Neb. 383, 6 N. W. 2d 365.

In that situation, plaintiffs sought in this action on

the one hand to affirm the validity and finality of the appraisement and be bound thereby and benefit therefrom insofar as beneficial to them, and, on the other hand, to collaterally attack and repudiate the appraisement insofar as beneficial to defendant, upon the basis of estoppel and waiver, heretofore disposed of. In that regard, however, defendant claims that the appraisement was final and not subject to collateral attack for failure of plaintiffs to prosecute error therefrom. Defendant also claims that plaintiffs, not having paid the final appraisement, could not as a matter of law maintain conversion, and that under the stipulated undisputed facts now appearing in this record, the judgment of the trial court was clearly wrong. We sustain that contention. On the other hand, defendant also argued that under the stipulated undisputed facts now appearing in this record and the law applicable thereto, the trial court erred in refusing to render a judgment in favor of defendant on her cross-petition for $18,817.80, the difference between the total appraisement, less $1,526 already paid thereon by plaintiffs, or $42,500, and $23,682.20, the net sum received by defendant for 14,853 bushels and 20 pounds of wheat at the then market price of $1.89 per bushel after deducting $4,390.60 cost of harvesting paid by defendant. In that respect, this is a law action and defendant did not make any motion for judgment at conclusion of the evidence or file any motion for judgment in accordance with such a motion theretofore duly made. Thus this court may not order and direct a judgment for defendant as requested by her. In that connection, it is sufficient here for us to say that defendant's theory of recovery by cross-petition of the balance of the unpaid assessment is erroneous in two respects. First, before defendant is permitted to recover upon her cross-petition she must account for and credit plaintiffs with all the bushels and pounds of wheat admittedly harvested by her at the rate of $2.15 per bushel, the price fixed in the appraisement as the

basis for dollar valuation of the estimated crop, instead of $1.89 per bushel, the market price at time of harvesting; and second, therefrom she may deduct only $3,750, the cost of harvesting as fixed by the appraisement instead of $4,390.60, the amount she actually paid therefor.

With regard to finality of the appraisement, the following rules are controlling. Sections 25-1901 to 25-1910, R. R. S. 1943, authorize a review in the district court by petition in error of final orders, such as appraisements of improvements on school lands by county commissioners or supervisors acting as a quasi-judicial tribunal under and pursuant to section 72-240.06, R. R. S. 1943, and such provisions afford an adequate remedy. From v. Sutton, *supra;* Jungman v. Coolidge, *supra.* Such cases are also authority for the conclusion that appraisements of improvements on school lands under and pursuant to section 72-240.06, R. R. S. 1943, by county commissioners or supervisors from which no error has been presented, shall be given the same weight as the verdict of a jury or the findings and judgment of a court.

As recently as Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N. W. 2d 333, this court reaffirmed that: "A judgment on the merits in the trial of a civil action constitutes an effective bar and estoppel in a subsequent action upon the same claim or demand, not only as to every matter offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for that purpose." By analogy, of course, the same rule of res judicata also applies to appraisements by county commissioners or supervisors which have become final in proceedings relating to the appraisement of improvements on school lands, under and pursuant to section 72-240.06, R. R. S. 1943.

This court has held that: "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modi-

fied or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack." Katz v. Swanson, 147 Neb. 791, 24 N. W. 2d 923. In that regard: "The action of a tribunal created by statute, where it has jurisdiction of the subject-matter and the parties, is conclusive unless reversed or modified in the mode provided by law." State ex rel. Sorensen v. Knudtsen, 121 Neb. 270, 236 N. W. 696. See, also, Burkley v. City of Omaha, 102 Neb. 308, 167 N. W. 72; City of Wayne v. Adams, 156 Neb. 297, 56 N. W. 2d 117; Nelson v. Nelson, 152 Neb. 741, 42 N. W. 2d 654.

The foregoing rules have application here and prevent plaintiffs from collaterally impeaching the appraisement made by the county commissioners on June 24, 1952.

We turn then to the question of plaintiffs' right to maintain conversion. As early as Holmes v. Bailey, 16 Neb. 300, 20 N. W. 304, this court held: "In an action for damages alleged to have been sustained by reason of the conversion of personal property, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the defendant." Such case also concluded that in order to maintain conversion, plaintiff must have had the actual custody of or some species of property, either general or special, in the property which is the subject of the action, with an immediate right to possession of the property. See, also, Fitzsimons v. Frey, 153 Neb. 550, 45 N. W. 2d 603; Kimball v. Cooper, 134 Neb. 536, 279 N. W. 194; Burchmore v. Byllesby & Co., 140 Neb. 603, 1 N. W. 2d 327.

In Indiana Harbor Belt R. R. Co. v. Alpirn, 139 Neb. 14, 296 N. W. 158, this court held: " 'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' 26 R. C. L. 1098, sec. 3." As held in Hansen v. Village of Ralston, 147 Neb. 251, 22 N. W. 2d 719, and the same case reported at 145 Neb.

838, 18 N. W. 2d 213: "A bona fide reasonable detention of property by one who has assumed some duty respecting it, for the purpose of ascertaining its true ownership, or of determining the right of the demandant to receive it, will not sustain an action for conversion." In the latter opinion, quoting from 26 R. C. L., § 34, p. 1124, it is said: "Moreover, a refusal of goods after demand is no conversion, if the circumstances show that it is caused by a reasonable apprehension of the consequences, in a doubtful matter. In many instances, a qualified refusal to deliver the goods in question, on demand, has been held not to constitute a conversion, when such qualification is reasonable and stated in good faith." See, also, 53 Am. Jur., Trover and Conversion, §§ 45, 46, pp. 842, 843.

In Fitzsimons v. Frey, *supra,* this court said: "In 53 Am. Jur., Trover and Conversion, § 68, p. 863, it is said: 'The general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to the immediate possession of the property. An interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time.'" See, also, 53 Am. Jur., Trover and Conversion, § 87, p. 879. Further, in 65 C. J., Trover and Conversion, § 105, p. 65, it is said: "Plaintiff's failure to perform a condition precedent will defeat his action for a wrongful conversion." We conclude that, in the light of this record and the foregoing rules, plaintiffs could not maintain an action for conversion.

Other matters are argued in the briefs, but as we view it, they require no discussion in order to dispose of the merits. For reasons heretofore stated, we conclude that the judgment should be and hereby is reversed and the cause is remanded for further proceedings in accord with this opinion. All costs are taxed to plaintiffs.

REVERSED AND REMANDED.